## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**(1) SCOTT NOVE,**

**Plaintiff,**

**v.**

**(1) JOE BEERS, individually,**
**(2) BRAD CRAIG, individually and in**
**his official capacity as Chief of**
**Police for the City of Inola, and,**
**(3) CITY OF INOLA, OKLAHOMA**

**Defendants.**

**CASE NO. 20-CV-651-JFH**

## COMPLAINT

COMES NOW, Plaintiff Scott Nove ("Nove"), and for his causes of action against

Defendants, Joe Beers, Brad Craig, and City of Inola, Oklahoma, alleges and states as follows:

## PRELIMINARY STATEMENT

1.  On January 11, 2020, Nove was recklessly shot, sustaining permanent injuries, in Inola,
    Oklahoma as a result of the objectively unreasonable and unconstitutional deadly force
    used by Defendant Joe Beers. Beers is an officer of the City of Inola Police Department
    and was acting in that capacity when he chased down and shot Scott Nove.

2.  This is a civil action seeking damages against defendants for committing acts under color
    of law, and depriving Plaintiff of rights secured by the Constitution and law of the United
    States and the State of Oklahoma and is brought pursuant to 42 U.S.C. § 1983 and the
    Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, et. seq.

3.  Through this action, Plaintiff seeks all relief to which he may be entitled under the law,
    including an award of compensatory damages, punitive damages, attorney fees, and costs
    from defendants for the deprivation and violation of Plaintiff's rights under the United

States Constitution and Oklahoma law. Plaintiff contends that defendants are guilty of certain acts and/or omissions, created, maintained, and/or engaged in policies, procedures, practices, and/or customs which have contravened and violated the rights guaranteed to Plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution, as well as various provisions of Oklahoma law, including but not limited to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, *et seq*.

## **JURISDICTION AND VENUE**

4.  This court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action is also brought under and pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiff's rights guaranteed under the United States Constitution including the Fourth and Fourteenth Amendments.

5.  Plaintiff has complied with all requirements under the Oklahoma Governmental Tort Claim Act, 51 O.S. § 151 et. seq.

6.  Venue is proper in the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391, in that all of the relevant events, acts and omissions occurred in this judicial district, the defendants maintain offices in this judicial district, the defendants regularly conduct business in this district, and/or the defendants resided in this judicial district.

7.  At all material times mentioned herein, the individual law enforcement officers involved in this incident were acting under color of state law and within the scope of their employment and/or authority as employees, agents and/or servants for Defendant City of Inola.

8.      In the alternative, Defendant Beers was acting outside the scope of his employment, such that the Oklahoma Governmental Tort Claims Act, 51 O.S. § 153(c) does not exempt Defendant Beers from personal liability for his tortious conduct.

9.      This Court also has supplemental jurisdiction over the Oklahoma state law claims asserted herein pursuant to 28 U.S.C. § 1367, including but not limited to claims asserted pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, *et seq*.

## COMPLIANCE WITH THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT, 51 O.S. § 151, *et seq*.

10.     The events giving rise to this suit occurred on January 11, 2020 and Plaintiff properly served Notice of his tort claim within 1 year of that date.

11.     Plaintiff served a Notice of Tort Claim, as required by the Oklahoma Governmental Tort Claims Act, on Brandi Powell, Town Clerk for the Town of Inola, on March 11, 2020.

12.     Plaintiff served a Notice of Tort Claim, as required by the Oklahoma Governmental Tort Claims Act, on Larry Grigg, Mayor of the Town of Inola, on March 11, 2020.

13.     Plaintiff served a Notice of Tort Claim, as required by the Oklahoma Governmental Tort Claims Act, on Brad Craig, Chief of Police for the Inola Police Department on March 11, 2020.

14.     The Notice to the Town of Inola, served on Brandi Powell as Town Clerk for the Town of Inola, was received and signed for by Brandi Powell on March 16, 2020.

15.     The Notice to Brad Craig, Chief of Police for the Inola Police Department, was received and signed for by Brandi Powell, Town Clerk of Inola, on March 16, 2020.

16.     The Notice to Larry Grigg, Mayor of the Town of Inola, was received and signed for by Brandi Powell, Town Clerk of the Town of Inola, on March 16, 2020.

17.     Plaintiff's claim was deemed denied on June 14, 2020.

18.     Plaintiff is bringing this action now within 180 days from the date of that deemed denial.

## PARTIES

19.     Plaintiff Scott Nove was a resident of Rogers County, Oklahoma, at all times material hereto.

20.     Defendant Joe Beers ("Beers") was a resident of Rogers County, Oklahoma, at all times material hereto. Beers is sued in his individual capacity as a police officer for the City of Inola.

21.     Defendant Brad Craig ("Craig") was a resident of Rogers County, Oklahoma, at all times material hereto. Craig is sued in his individual capacity, as well as in his official capacity as the Chief of Police for the City of Inola. Defendant Craig is responsible for the operation of the Inola Police Department and its law enforcement officers. As such, Defendant Craig has the authority to employ law enforcement officers, and is final policy and decision-making authority regarding law enforcement matters for the City of Inola.

22.     City of Inola, Oklahoma, is a municipality and political subdivision located in Rogers County, Oklahoma and is responsible for the operation of the Inola Police Department and its law enforcement officers. As such, Defendant Inola may sue or be sued by name and has the authority to employ law enforcement officers, appoint a police chief, and is the final policy and decision-making authority regarding law enforcement matters for the City of Inola.

## FACTS

23.     Each of the foregoing facts and paragraphs is incorporated as if fully set forth herein.

24.     The events giving rise to this case occurred on January 11, 2020, in Inola, Oklahoma, which is located in Rogers County.

25.     At all times relevant hereto, Beers was acting under of color of law.

26.     At all times relevant hereto, Beers was employed by and acting in the course and scope of his employment as a police officer with the City of Inola Police Department.

27.     In the alternative, Beers was, at all times relevant hereto, outside the course and scope of his employment as a police officer with the City of Inola Police Department.

28.     Beers was operating a patrol car owned buy, in the custody of and under the control of the City of Inola Police Department.

29.     According to Defendant Beers in his sworn-affidavit signed on February 8th, 2020, at approximately 7:15 p.m., Defendant Beers observed Plaintiff trying to push start a motorcycle on 4200 Road south of Highway 412.

30.     The motorcycle was owned by David Guy McFarland and Plaintiff was operating the motorcycle with permission of David Guy McFarland.

31.     Defendant Beers' Affidavit states that Defendant Beers then approached Plaintiff and the motorcycle in his patrol car to make sure the driver did not need any help, but the motorcycle had started and Plaintiff was driving it southbound on 4200 Road.

32.     Defendant Beers' Affidavit states that as Beers got behind the motorcycle, the driver exited to the west shoulder of 4200 Road north of 590 Road and motioned for Defendant Beers to go around.

33.     Plaintiff was not aware that Beers was a police officer when he motioned Beers to go around him.

34.     Defendant Beers stated that he intended to stop Plaintiff because the license plate on the motorcycle was defaced and obscured.

35.     Beers was able to clearly read the license plate.

36.  In the dispatch recordings of the traffic stop, Beers relayed the full license plate number to dispatch long before pulling Plaintiff over.

37.  When asked during the dispatch recordings for Beers' probable cause to stop Plaintiff, Beers does not respond.

38.  At all times relevant hereto, there was no outstanding warrant for Plaintiff's arrest.

39.  At all times relevant hereto, Beers was not presented with nor did he have knowledge of any facts that would lead a reasonably objective law enforcement officer to conclude that Plaintiff had committed some crime, was committing a crime, or was about to commit a crime.

40.  At all times relevant hereto, Beers was not presented with nor did he have knowledge of any facts that would lead a reasonably objective law enforcement officer to conclude that Plaintiff posed a threat or risk of death or great bodily harm to anyone, including Defendant Beers.

41.  At all times relevant hereto, Beers did not have reasonable suspicion to initiate an investigatory stop of Plaintiff.

42.  At all times relevant hereto, Beers did not have probable cause to arrest Plaintiff or otherwise effect a seizure of Plaintiff.

43.  After Beers did not go around Plaintiff in response to his motioning, Plaintiff continued on the motorcycle with Beers behind him. Plaintiff was still unaware that Beers was a police officer.

44.  Once Plaintiff realized Beers was a police officer, Plaintiff motioned for Beers to follow Plaintiff to David McFarland's home – that Plaintiff was housesitting and who owned the motorcycle Plaintiff was operating.

45.   Beers was not engaged in a pursuit of Plaintiff. Rather, Plaintiff believed that Beers was agreeing to follow Plaintiff to David McFarland's house as Plaintiff had gestured previously.

46.   On the way to David McFarland's home, Plaintiff mistakenly missed a left turn on to E 610 Road. At this time, Plaintiff was still travelling southbound on S 4200 Road.

47.   Once Plaintiff realized he missed the turn, he attempted to turn the motorcycle around by performing a U-Turn on S 4200 Road in order to head back north.

48.   As Plaintiff was turning around, Officer Beers used his firearm to shoot Plaintiff, without cause or justification for the use of deadly force.

49.   Beers shot Plaintiff while Beers' was seated inside Beers' patrol vehicle.

50.   At the time Plaintiff was shot, Beers was not presented with nor did he have knowledge of any facts that would lead a reasonably objective law enforcement officer to conclude that Plaintiff posed a threat or risk of death or great bodily harm to anyone, including Defendant Beers.

51.   Plaintiff was struck by at least one bullet, hitting him in the left foot from behind.

52.   As a direct result of the action of Officer Beers, Plaintiff was seriously wounded.

53.   At the time of the shot(s) which injured Plaintiff, the motorcycle was headed away from Beers and not toward any person or officer on the scene, such that its movement did not present an imminent threat of death or great bodily harm to any of the law enforcement officers at the scene or anyone else.

54.   There was no conduct, action, or behavior demonstrated by Plaintiff at the time of the shooting or in the moments leading up to the shooting that presented an imminent threat of

death or great bodily harm to any of the law enforcement officers on the scene or anyone else.

55. Beers' use of deadly force under the circumstances was not objectively reasonable.

56. In using deadly force under the circumstance with which he was confronted, Beers acted with callous and reckless disregard and deliberate indifference to the constitutional rights of Plaintiff.

57. Under these circumstances, any objectively reasonable officer would and should have concluded that deadly force was not necessary or justified as no imminent threat of death or great bodily harm existed when Beers began firing.

58. It was objectively unreasonable for Beers to use deadly force against Plaintiff.

59. Any objectively reasonable officer presented with the same or similar circumstances as those with which Beers was presented, would not have used deadly force against Plaintiff, and Beers, in doing so, violated the constitutional rights of Plaintiff.

60. Plaintiff suffered an open displaced calcaneus fracture to his left ankle from the gun-shot wound that Beers' inflicted, resulting in multiple gun-shot fragments lodged in his bone.

61. The gun-shot wound produced a painful infection in the wound site that required IV pain medication to be administered that was followed with IV antibiotics.

62. Plaintiff had to undergo surgery to repair the displaced calcaneus fracture and the foot abscess on his left ankle.

63. Plaintiff still has gun-shot fragments lodged in his bone located his left ankle from the infliction of the gun-shot wound.

64. Beers' use of deadly force was unnecessary and objectively unreasonable and violated the constitutional rights of Plaintiff.

65.   At the time of the shooting, Beers was subject to the direction, supervision and control of the City of Inola Police Department.

66.   On December 14, 2019, Beers had a previous encounter with Plaintiff during which he told Plaintiff "If I ever see you again, I'm going to make it my first priority to ruin your life."

67.   Beers' threat to Plaintiff was witnessed by others.

68.   On August 8, 2019, Officer Beers abused his power as a police officer to sexually assault and rape a young woman in the course of conducting a traffic stop. This rape occurred while on duty with Inola Police Department.

69.   Defendant City of Inola and Defendant Craig were aware that Beers' was accused of abusing his power by sexually assaulting and raping this young woman prior to January 11, 2020, when Beers again abused his power as a police officer by unlawfully seizing and shooting Plaintiff in order to make true of Beers' promise to "make it [his] first priority to ruin [Plaintiff's] life.

70.   Beers has been accused of abusing his power as a police officer in other situations both before and after Beers shot Plaintiff.

71.   Such conduct and statements were enough to put Defendant City of Inola and Defendant Craig on notice of Defendant Beers' unfitness for police duty.

72.   Defendant City of Inola and/or Defendant Craig deliberately disregarded their constitutional duties to properly train, supervise and discipline Beers, especially in light of their prior knowledge of Beers' unlawful conduct.

73.   The policies, practices and customs created, implemented and/or enforced by Defendant City of Inola and/or Defendant Craig encouraged, and certainly did not discourage, officers, like Beers, to use abuse their power, including the unlawful shooting of Plaintiff.

74.    At all times relevant hereto, Craig was the duly-appointed Chief of Police for the City of

Inola, and was engaged and performing duties within the course and scope and his office.

All actions attributable herein to Craig were in furtherance of his position as Police Chief

of the City of Inola. Craig's actions were in furtherance of his duties as an agent and

representative of Defendant Inola and as well as in furtherance of his authority to preserve

the peace within the territorial jurisdiction of the City of Inola.

75.    At all times material hereto, Craig was acting under color of law when performing his

duties as Chief of Police.

## COUNT I – FALSE ARREST

76.    Plaintiff incorporates all previous allegations and statements and further alleges as follows:

77.    Defendant Beers violated Plaintiff's Fourth Amendment Rights cognizable under 42

U.S.C. § 1983, which guarantee freedom from unreasonable searches and seizures.

78.    Defendant Beers' conduct carried out under the color of state law deprived Plaintiff of his

rights, privileges, and immunities secured by the Constitution and laws.

79.    Defendant Beers wrongfully arrested and detained Plaintiff without probable cause or

reasonable suspicion.

80.    The above-described conduct of Defendant Beers was a direct and proximate cause of the

deprivation of Plaintiff's clearly established Fourth Amendment rights, as well as the

resulting injuries, and damages described below.

81.    Defendant Beers, under color of law, wrongfully stopped, seized, and/or arrested Plaintiff,

and thus violated Plaintiff's constitutional rights and is therefore, "liable...in an action at

law, suit in equity, or other proper proceeding for redress...," as per 42. U.S.C. § 1983.

## COUNT II – USE OF EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983

82.     Plaintiff incorporates all previous allegations and statements and further allege as follows:

83.     Under the Fourth Amendment of the United States, every person in the United States of America has the right to be secure against unreasonable seizures of their person, and 42 U.S.C. § 1983 prevents individuals from acting in a government capacity or under color of law from unlawful deprivation of those rights.

84.     Defendant Beers' conduct on January 11, 2020, specifically, the use of deadly force by discharging his firearm at Plaintiff from behind while attempting an unlawful traffic stop and/or arrest, where the Plaintiff was not dangerous and posed no threat of physical harm to Defendant Beers, or others, constitutes excessive force and is a deprivation of Plaintiff's rights secured under the U.S. Constitution.

85.     A reasonable law enforcement officer would know that the use of excessive force under these circumstances is a violation of constitutionally guaranteed rights and that a citizen's right not to be subjected to such excessive force was clearly secured and established at the time. See *Graham v. Connor,* 490 U.S. 386, 397 (1989); *Tennessee v. Garner,* 471 U.S. 1, 11–12 (1985); *Smart v. Aragon*, 569 F.3d 1183 (10th Cir. 2009).

86.     At the time of the actions and/or omissions of Defendant Beers, 22 O.S. § 34.1 defined "excessive force" as "force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity."

87.     At the time of this incident, Inola Police Department policies Section 11.6 prohibited the discharge of firearms to affect an arrest for a misdemeanor, to prevent the escape of a person arrested for a misdemeanor, or to apprehend a person fleeing arrest for a misdemeanor.

88.   It is not reasonable to shoot an individual driving away from an officer and an unlawful traffic stop and/or arrest, when that individual does not pose an immediate threat to an officer or others. See *Graham v. Connor,* 490 U.S. 386, 397 (1989); *Tennessee v. Garner,* 471 U.S. 1, 11–12 (1985); *Smart v. Aragon*, 569 F.3d 1183 (10th Cir. 2009).

89.   Defendant Beers had a duty to refrain from violating Plaintiff's constitutional rights.

90.   Any reasonable law enforcement officer would have been aware that the conduct of Defendant Beers, as described herein, would violate Plaintiff's constitutional rights and that such law was clearly established. See *Reavis estate of Coale v. Frost*, 967 F.3d 978 (10th Cir. 2020).

91.   The force that Defendant Beers used was excessive and unnecessary under the totality of the circumstances.

92.   The excessive force used by Defendant Beers upon Plaintiff was not justified or privileged under clearly established law.

93.   No legitimate law enforcement objective was accomplished by the degree of such force utilized by Defendant Beers.

94.   Defendant Beers' use of force was objectively unreasonable, as well as intentional, willful, wanton, and in gross and reckless and negligent disregard of Plaintiff's rights under the Fourth Amendment of the United States Constitution.

95.   The use of force by Defendant Beers against Plaintiff posed a substantial risk of causing death or serious bodily harm that was known to Defendant Beers at the time and did in fact cause great bodily harm, mental and emotional injury, and dignitary injury.

96.    The above-described conduct of Defendant Beers was a direct and proximate cause of the deprivation of Plaintiff's clearly established Fourth Amendment rights, as well as the resulting injuries, and damages described below.

97.    Defendant Beers, under color of law, unjustifiably used excessive force, and thus, violated Plaintiff's constitutional rights and is therefore, "liable...in an action at law, suit in equity, or other proper proceeding for redress..." as per 42. U.S.C. § 1983.

98.    Plaintiff also asserts this claim against the City of Inola, through Defendant Craig in his official capacity, for "municipal liability" under *Monell v. Dept. of Soc. Services of New York*, 436 U.S. 658, 694, 98 S. Ct. 208, 56 L. Ed. 2d 611 (1978) for the hiring or appointment of Beers as a police officer, for failing to properly train and supervise Beers regarding the constitutional limitations of the use of deadly force, for the failure to promulgate and operationalize a constitutionally-compliant use of deadly force policy, among other claims described herein including the deliberate indifference to the protection of plaintiffs' constitutional rights. Plaintiff's injuries and damages were the result of official policy, custom, or practice of these defendants, the act of an official policy maker attributable to these defendants, and/or the direct result of deliberate indifference attributable to these defendants.

## COUNT III – ASSAULT AND BATTERY

99.    Plaintiffs incorporate all previous allegations and statements and further allege as follows:

100.    Defendant Beers, without the consent of Plaintiff, acted either with the intent of making a harmful/offensive contact with the person of Plaintiff, or with the intent of putting Plaintiff in apprehension of such a contact.

101.    Defendants Beers' act resulted in a harmful/offensive contact with Plaintiff.

102.   Defendant Beers was acting in the scope of his employment, such that Defendant Town of Inola is liable under the Oklahoma Governmental Tort Claims Act.

103.   In the alternative, Defendant Beers was acting outside the scope of his employment, such that Defendant Beers is personally liable.

104.   The injuries and damages sustained by Plaintiff, more particularly described below, were produced in a natural and continuous sequence from and as a foreseeable result of the Defendant's violation of the above described independent duties of ordinary care for the safety of Plaintiff.

## COUNT IV – NEGLIGENCE

105.   Plaintiff incorporates all previous allegations and statements and further alleges as follows:

106.   Defendant Beers had a duty to act reasonably when encountering citizens, in an effort to prevent harm to Plaintiff and others.

107.   On January 11, 2020, Defendant Beers acted unreasonably and negligently when he encountered Plaintiff.

108.   As a result of Defendant Beers' choices and actions on January 11, 2020, Plaintiff suffered physical and mental injuries and damages.

109.   Defendant Beers were acting within the scope of his employment at all relevant times, such that Defendant Town of Inola is liable for the damages caused to Plaintiff under the Oklahoma Governmental Tort Claims Act.

110.   In the alternative, Defendant Beers were acting outside the scope of their employment at all relevant times, such that Defendant Beers is personally liable for the damages caused to Plaintiff.

111.    The injuries and damages sustained by Plaintiff, more particularly described below, were produced in a natural and continuous sequence from and as a foreseeable result of the Defendant's violation of the above described independent duties of ordinary care for the safety of Plaintiff.

### COUNT V – DELIBERATELY INDIFFERENT POLICIES, PRACTICES AND CUSTOMS, AND DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION IN VIOLATION OF 42 U.S.C. § 1983

112.    Plaintiff incorporates all previous allegations and statements and further alleges as follows:

113.    Defendant Craig was aware that pursuant to 22 O.S. § 34.1 "[e]ach law enforcement entity which employs any peace officer shall adopt policies and guidelines concerning the use of force by peace officers which shall be complied with by peace officers in carrying out the duties of such officers within the jurisdiction of the law enforcement entity."

114.    The above-described conduct reflects an established policy, practice, custom, or decision, officially adopted or informally accepted, ratified, or condoned by Defendant Craig, and his officials and employees, that consists of arming police officers with dangerous weapons, such as firearms, without proper training and supervision as to their safe, reasonable and appropriate use.

115.    It is clearly established law that Defendant Craig must train and supervise police officers and other law enforcement personnel about proper procedures for arrests and the reasonable use of force, including, but not limited to, excessive force, to reduce the pervasive and unreasonable risk of grave constitutional injury.

116.    Defendant Craig has an affirmative duty to take action to properly train and supervise employees or agents and prevent their unlawful actions.

117.   Defendant Craig failed to properly train and supervise employees or agents in a manner and to an extent that amounts to deliberate indifference. Defendant Beers engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

118.   Defendant Craig was the official policymaker and final decision-maker City of Inola Police Department in the area of law enforcement.

119.   Under information and belief, Defendant Craig had a policy, custom, and procedure of not ensuring that officers like Defendant Beers were appropriately and adequately trained as to when and under what circumstances to effectuate an arrest and under what circumstances to use force.

120.   Upon information and belief, Defendant Craig, acting through subordinate law enforcement officers, had a persistent, widespread practice of depriving citizens of their constitutional rights, that it was sufficiently common and well established as to constitute municipal policy or custom.

121.   Upon information and belief, these customs or policies of unconstitutional conduct, as shown by the acts and omissions of other subordinate law enforcement officers, permitted or condoned actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of such conduct.

122.   Defendant Craig understood:

   a.   that police officers, such as Defendant Beers could and would exceed constitutional limitations on the use of force;

   b.   that the use of force may arise under circumstances that constitute a usual and recurring situation with which officers such as Defendant Beers must manage;

    c.  that providing inadequate training or failing to enforce existing policies under such circumstances demonstrates deliberate indifference on the part of the Defendants toward persons with whom Defendant Beers would come into contact; and,

    d.  that failing to provide such training or to enforce policies and procedures to ensure that Defendant Beers followed such training would be a direct causal link between the constitutional deprivation to which citizens, such as Plaintiff, would be exposed—in other words, when Defendant Craig sent Beers out in the public domain, it was obvious that failing to adequately train him or enforce policies and procedures would equate deliberate indifference to the rights of the public with whom he came into contact.

123. Prior to this shooting, Defendant Craig should have been on notice of Defendant Beers' unfitness for duty and propensity to threaten individuals, sexually assault individuals, and otherwise act with complete disregard for the constitutional rights of persons he encountered.

124. The failure to supervise, discipline, or fire Defendant Beers prior to this instance, given this prior notice, constitutes deliberate indifference to Defendant Craig's duty to properly supervise and train Defendant Beers.

125. The failure to supervise, discipline, or fire Defendant Beers prior to this instance, given this prior notice, constitutes a consistent custom, policy, or practice of condoning and accepting such behaviors of Defendant Beers.

126. The above-described policies and customs of Defendant Craig permitted or condoned the violation of Plaintiff's rights, demonstrated deliberate indifference to the constitutional rights of the persons within the Town of Inola and were the cause of the injuries and damages suffered by Plaintiff.

127.   Defendant Craig also knew that absent the adoption of specific and/or adequate policies, procedures, and tactics governing law enforcement encounters with citizens like Plaintiff, and absent training of law enforcement officers in such policies, procedures, and tactics, it was highly predictable that such failure to train would lead to law enforcement officers' violation of the Fourth Amendment rights of citizens, and could likely result in the otherwise avoidable injury of such citizens.

128.   Inadequate training and supervision of Defendant Beers about the proper procedures to be used in making an arrest, the use of force, including, but not limited to, excessive force, was so likely to result in grave constitutional injury to citizens that the failure to provide adequate training and supervision to Defendant Beers in these areas constituted a deliberate indifference to and acquiescence in such injury to Plaintiff.

129.   Defendant Beers received no form of discipline or reprimand from Defendant Craig for his above-described use of excessive force against Plaintiff.

130.   Defendant Craig ratified the conduct of Defendant Beers in concluding that the conduct was consistent with the policies, procedures, and training of Defendant Craig.

131.   Defendant Beers' actions and/or inactions stem from the execution of a government policy, custom, or official decision of indifference as to the protection of citizens' constitutional rights and his actions can fairly be said to represent such a policy and custom.

132.   Defendant Craig's failure to ensure and accomplish or enforce such proper training caused Defendant Beers to effectuate an inappropriate/unlawful traffic stop and/or arrest and to use excessive force in violation of the U.S. Constitution, proximately and directly causing serious injury to Plaintiff.

133. In the alternative, Plaintiff asserts the above-described claim for "municipal liability" under *Monell v. Dept. of Soc. Services of New York*, 436 U.S. 658, 694, 98 S. Ct. 208, 56 L. Ed. 2d 611 (1978) against the City of Inola to the extent City of Inola; not Defendant Craig, was the final policy-maker for Inola Police Department.

## CAUSATION OF INJURIES AND DAMAGES

134. Plaintiff incorporates all previous allegations and statements and further alleges as follows:

135. The injuries and damages sustained by Plaintiff, were produced in a natural and continuous sequence from Defendants' violation of one or more of the above described independent constitutional duties.

136. The injuries and damages sustained by Plaintiff were a probable consequence from Defendants' violation of one or more of the above described independent duties.

137. Defendants should have foreseen and anticipated that a violation of one or more of the above-described independent duties would constitute an appreciable risk of harm to others, including Plaintiff.

138. If Defendants had not violated one or more of the above-described independent duties, then Plaintiff's injuries, death, and other damages would not have occurred.

## COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

139. Plaintiff incorporates all previous allegations and statements and further alleges as follows:

140. Plaintiff claims all damages and remedies available under state and federal law.

141. The injuries and damages sustained by Plaintiff as a result of Defendants' violations include but are not limited to the following:

    a. Plaintiff's physical pain and suffering, past and future;

    b. Plaintiff's mental pain and suffering, past and future;

c.   Plaintiff's age;

d.   Plaintiff's physical condition immediately before and after the accident;

e.   The nature and extent of Plaintiff's injuries;

f.   Whether the injuries are permanent;

g.   The physical impairment;

h.   The disfigurement;

i.   Loss of [earnings/time];

j.   Impairment of earning capacity;

k.   The reasonable expenses of the necessary medical care, treatment, and services, past and future.

## AMOUNT OF DAMAGES

142.   Plaintiff's injuries and damages are in excess of the amount required for diversity jurisdiction under 28 U.S.C. 1332 (currently $75,000.00), plus attorney fees, interest, costs and all such other and further relief for which should be awarded as judgment against Defendants in an amount to fully and fairly compensate Plaintiff for each and every element of damages that has been suffered.

## PUNITIVE DAMAGES

143.   Plaintiff incorporates all previous allegations and statements and further alleges as follows:

144.   Plaintiff is entitled to punitive damages on claims brought against individual Defendants pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Plaintiff's federally protected rights.

145.   Plaintiff is entitled to punitive damages on claims brought against individual Defendants on state law claims where said individual Defendants were acting outside the scope of their

employment, as Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Plaintiff's protected rights.

## DEMAND FOR JURY TRIAL

146.   Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

147.   Plaintiff reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

WHEREFORE, Plaintiff, Scott Nove, prays for judgment against Defendants in a sum excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332 (currently $75,000.00) plus interest, attorneys fee, costs, and all such other relief as to which Plaintiff may be entitled.

Respectfully submitted,

LAIRD, HAMMONS, LAIRD, PLLC

s/Jonathan Ortwein
Chris Hammons, OBA #20233
Jason M. Hicks, OBA #22176
Jonathan Ortwein, OBA #32092
Laird Hammons Laird, PLLC
1332 S.W. 89th Street Oklahoma
City, OK 73159 Telephone:
405.703.4567 Facsimile:
405.703.4067
E-mail:   chris@lhllaw.com
jason@lhllaw.com
jonathan@lhllaw.com
Attorneys for Plaintiff

**ATTORNEY LIEN CLAIMED**